**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**The PROCESS CORPORATION, Respondent.**

**No. 17306.**

United States Court of Appeals Seventh Circuit.

June 23, 1969.

Marcel Mallet-Prevost, Asst. General Counsel, Ian D. Lanoff, Attorney, N.L.R.B., Washington, D. C., Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, William F. Wachter, Attorney, N.L.R.B., for petitioner.

Jerry Kronenberg, Herbert L. Borovsky, Chicago, Ill., for respondent.

Before KILEY and CUMMINGS, Circuit Judges, and ESCHBACH, District Judge.[1]

ESCHBACH, District Judge.

This case is before the court upon the petition of the National Labor Relations Board for enforcement of its order of March 21, 1968, which directs respondent, The Process Corporation [hereinafter "Company"], to bargain with the Chicago Printing Pressmen's Union No. 3 upon request. Three issues are presented: (1) Did the Board accord proper review to the Hearing Officer's Report concerning an underlying representation proceeding? (2) Is there substantial evidence to support the Board's findings? (3) Did the Board order the appropriate remedy? We conclude that the Board's order should be enforced.

The Company is engaged in the printing of Christmas greeting cards. On September 26, 1966, a representation petition was filed by the union seeking certification as the bargaining representative of the Company's pressroom employees. On November 1, 1966, pursuant to a Stipulation for Certification Upon Consent Election, the Board conducted a secret ballot election. Of thirty-three potentially eligible voters, sixteen voted in favor of the union, fifteen voted against, and the union challenged two voters on the ground that they were "supervisors" within the meaning of the Act, 29 U.S.C. § 152(11) (1964), and therefore not entitled to vote. Since the challenged ballots were sufficient to affect the outcome of the election, the Regional Director conducted an administrative investigation and, on December 15, 1966, issued a Report in which he ordered that a formal hearing be held with respect to the duties, responsibilities,

1. Of the United States District Court for the Northern District of Indiana, sitting by designation.

and authority of the two challenged voters, Steve Stec and Emil Rizner, in order to determine their eligibility to vote.

The Hearing Officer conducted an evidentiary hearing and determined that Stec and Rizner were "supervisors" and recommended that the challenges be sustained. Pursuant to this recommendation, the Board certified the union on May 19, 1967. The Company, however, refused repeated requests by the union that bargaining be undertaken. Thereafter, pursuant to a charge filed by the union, the General Counsel issued a complaint alleging that the Company had committed unfair labor practices as defined by 29 U.S.C. §§ 158(a) (1), (a) (5) (1964). The cause came before a Trial Examiner who found that the Company had committed an unfair labor practice. On March 21, 1968, the Board adopted the Trial Examiner's findings, conclusions, and recommendations and ordered the Company to cease and desist from its unfair labor practices and to bargain upon request with the union. The Company refused to comply, and the Board petitioned this court for enforcement of its order.

### I.

At the hearing before the Trial Examiner in the unfair labor practices proceeding, the Company attempted to present to the Trial Examiner the same evidence which had been adduced before the Hearing Officer in the representation proceeding. The Company's view was that there had been no plenary review by the Board of the findings of the Hearing Officer and that the only method by which it would ever obtain this Board review was to reintroduce this evidence before the Trial Examiner. But the Trial Examiner refused to hear this evidence. The Company apparently would have this court remand the proceedings to the Board for a full review of the Hearing Officer's findings.

To support its contentions that the Board has never adequately reviewed the findings of the Hearing Officer, the Company points to the allegedly pro forma nature of the Board's Certification Order of May 19, 1967, and relies upon Pepsi-Cola Buffalo Bottling Co. v. NLRB, 409 F.2d 676 (2d Cir. 1969). The Company's argument is without merit, however, because the Board did give an adequate review to the Hearing Officer's report on challenged voters.

The Company objects to the fact that the Board rejected its contentions summarily without discussion or citation of authority. The Board, however, is not required to adhere to any particular form in issuing its decisions. While a more extended discussion might be the better practice, the Board did state that it had reviewed the Hearing Officer's rulings and had considered the entire record. No more is required. NLRB v. Jasper Chair Co., 138 F.2d 756 (7th Cir. 1943); American President Lines, Ltd. v. NLRB, 340 F.2d 490 (9th Cir. 1965); NLRB v. Champa Linen Service Co., 324 F.2d 28 (10th Cir. 1963). See NLRB v. Schill Steel Prod., Inc., 340 F.2d 568 (5th Cir. 1965); Division 1142, Street Ry. Employees v. NLRB, 294 F.2d 264 (D.C.Cir. 1961).

The *Pepsi-Cola* decision is of no value to the Company's argument. In the representation proceeding in that case, the Regional Director, on the basis of a Hearing Officer's examination, resolved an issue adversely to the company and in favor of the union. The company then petitioned the Board to review the decision of the Regional Director. The Board denied the petition on the ground that the issues raised were not substantial enough to warrant review. In the instant case, however, the Board *did* review the findings and rulings of the Hearing Officer. In its Certification Order of May 19, 1967, the Board stated that

[it] has reviewed the rulings made by the Hearing Officer at the hearing and finds that no prejudicial error was committed. The findings are hereby affirmed. The Board has considered the Hearing Officer's report, the exceptions and brief, and the entire record in this case, and adopts the Hearing Officer's findings and recom-

mendations that the Challenges to the ballots of Emil Rizner and Steve Stec be sustained. (Footnote omitted.)

It is clear, therefore, that the company is in error when it asserts that it never received a review by the Board of the Hearing Officer's findings in the representation proceeding.

## II.

The Company argues that the Board's finding that Stec and Rizner were "supervisors" is not supported by substantial evidence and that Stec and Rizner were "leadmen," that is, employees who were entitled to vote in the election. This court has reviewed the testimony presented before the Hearing Officer and concludes that there is substantial evidence to warrant a finding by the Board that Stec and Rizner were "supervisors."

 The question of who is a supervisor is a practical matter and a question of fact in which the Board must be permitted a large measure of informed discretion. NLRB v. American Oil Co., 387 F.2d 786 (7th Cir. 1967); NLRB v. Kolpin Bros. Co., 379 F.2d 488 (7th Cir. 1967); NLRB v. Elliott-Williams Co., 345 F.2d 460 (7th Cir. 1965). "Difficult questions concerning the status of an individual under the Act are entrusted initially to the Board, charged with the day-to-day administration of the Act as a whole." Journeymen Plasterers' Local 5 v. NLRB, 341 F.2d 539, 545 (7th Cir. 1965). Each case must be decided on its own facts, and the Board's determination is to stand if it has warrant in the record and a reasonable basis in the statute. NLRB v. Big Ben Dep't Stores, Inc., 396 F.2d 78 (2d Cir. 1968). Nevertheless, findings of the Board

> must * * * be set aside when the record before a Court of Appeals clearly precludes the Board's decision from being justified by a fair estimate of the worth of the testimony of witnesses or its informed judgment on matters within its special competence or both.

Universal Camera Corp. v. NLRB, 340 U.S. 474, 490, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951).

The Board found that Stec and Rizner were supervisors. A "supervisor" is

> any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibility to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

29 U.S.C. § 152(11) (1964). The existence of any one of the indicia is sufficient to support a finding that the one possessing it is a supervisor. NLRB v. Elliott-Willaims Co., 345 F.2d 460 (7th Cir. 1965).

The challenged voters work in the Company's pressroom. Stec works in the imprint section and Rizner works in the embossing section. The Board found, as ultimate facts, that Stec and Rizner have authority to assign work to pressroom employees, responsibly to direct these employees in their work, and effectively to recommend changes in the status of these employees. It was also found that, in so doing, Stec and Rizner were exercising independent judgment and were not acting in a merely routine manner.

 To support these ultimate findings, the Board made a number of preliminary findings. No purpose would be served by an exhaustive list, but a few examples will suffice by way of illustration. Stec and Rizner will determine a man's ability to run a press before he is hired by the supervisor; Stec and Rizner are in charge of the pressroom in the absence of the supervisor, which occurs during about fifty per cent of the work day; the supervisor relies on Stec's assessment of a man's work in determining whether or not the man will be tried out on another press; Stec and Rizner will point out incorrect work to

the Plant Superintendent, who will reprimand the worker; Rizner will assign men to a press if the regular operator is absent from work; Rizner and Stec on occasion will stop a press if they see a problem with its operation; Rizner and Stec are referred to by the employees as "foremen"; Stec once ordered six men to stop smoking in the restroom and return to work; Rizner once threatened to discharge a man who lit a firecracker in the plant; when employees are absent or wish to have time off work, they check with Stec or Rizner; Stec and Rizner are the highest paid men and receive the largest bonuses in the pressroom. This court has carefully examined the record and holds that these and other findings by the Board are supported by substantial evidence. The instant situation is generally comparable to NLRB v. Crean, 326 F.2d 391 (7th Cir. 1964), Benson Veneer Co. v. NLRB, 398 F.2d 998 (4th Cir. 1968), and Jas. H. Matthews & Co. v. NLRB, 354 F.2d 432 (8th Cir. 1966).

### III.

The Company's final argument is that, in the event this court holds as it has on the first two issues, it should not enforce the Board's bargaining order, but instead should direct the Board to conduct a new election or, in the alternative, remand the case to the Board for a consideration of the effect of changes in personnel of the Company. Allegedly, many of the employees who voted in the 1966 election are no longer employed by the Company. This contention is without merit. NLRB v. International Union Progressive Mine Workers, 375 U.S. 396, 84 S.Ct. 453, 11 L.Ed. 2d 412 (1964) (per curiam), rev'g 319 F.2d 428 (7th Cir. 1963); NLRB v. Katz, 369 U.S. 736, 748 n. 16, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962); Franks Bros. Co. v. NLRB, 321 U.S. 702, 64 S. Ct. 817, 88 L.Ed. 1020 (1944); NLRB v. P. Lorillard Co., 314 U.S. 512, 62 S.Ct. 397, 86 L.Ed. 380 (1942) (per curiam); NLRB v. Storack Corp., 357 F.2d 893 (7th Cir. 1966).

The Board's order will be enforced.