412 A.2d 1132.

# G. H. WATERMAN & CO., INC. *vs.* JOHN H. NORBERG.

MARCH 21, 1980.

PRESENT: Bevilacqua, C.J., Kelleher, Doris and Weisberger, JJ.

BEVILACQUA, C.J. This is a petition for certiorari to review a Superior Court judgment affirming a decision of the tax administrator assessing a use tax against the petitioner, G. H. Waterman & Co., Inc. (corporation), in the amount of $10,829.49 including interest and costs.

On August 24, 1971, the corporation was sent a notice of deficiency determination under the sales-and-use-tax law resulting primarily from its acquisition in 1965 and 1967 of eleven antique cars from its sole stockholder, George H. Waterman, Jr., in *pro tanto* satisfaction of Mr. Waterman's debt to the corporation. At the corporation's request, an administrative hearing on the deficiency determination was held on February 15, 1972. As a result of the evidence adduced at this hearing, the assessment against the corporation was upheld by the tax administrator in a final decision dated July 18, 1972. Thereupon petitioner filed a complaint

in Superior Court pursuant to the Administrative Procedures Act, G.L. 1956 (1977 Reenactment) §42-35-15(b), as amended by P.L. 1979, ch. 340, §1, seeking review of the tax administrator's decision. Prior to considering the matter, the Superior Court granted petitioner's motion for leave to present additional evidence before the tax administrator. A second and more extensive administrative hearing was then held on May 15, 1975. In a written decision the officer presiding at this hearing found that petitioner had acquired the antique cars for investment purposes and that use tax was properly imposed on the petitioner's acquisition of the cars. The tax administrator, after reading the record, affirmed and adopted this decision in his final decision dated March 11, 1976. After hearing argument and reviewing the record, a justice of the Superior Court affirmed the tax administrator's March 11, 1976 decision.

At the first administrative hearing, a revenue agent of the Rhode Island Division of Taxation testified that she audited petitioner's books on July 13, 1971, and found that between July 1, 1965, and July 31, 1969, there was an increase of $176,712.05 in the tangible personal assets owned by petitioner and listed in its corporate ledger under the investment account. The bulk of the increase, $157,790, was found to be derived from petitioner's purchases from its sole stockholder, Mr. Waterman, of eleven early-model cars, six of which were acquired on December 31, 1965, and five of which were treated as having been acquired on July 1, 1967. The revenue agent determined that use tax was due as a result of these purchases.

At the second hearing, Mr. Waterman testified that petitioner was incorporated in Rhode Island in 1940 and that the nature of its business was selling "cotton yarns and other type of yarns from mills in the South and in the North." He also stated that petitioner began to end that business "around 1970."

Mister Waterman further testified that in 1965 and 1967, upon the advice of his accountant, who also served as the cor-

poration's (outside) accountant, he transferred the eleven cars to petitioner in partial satisfaction of a debt he owed to the corporation. Mister Waterman also explained that he had acquired the cars because of his interest in antique automobiles which began as a hobby in the late 1920s but later turned into "more of a business because the value of the cars changed so rapidly over the years." According to Mr. Waterman, petitioner acquired the cars from him because "they were an excellent investment" and petitioner intended "to either lease them or hold them until we could sell them for a price I thought was right."

According to Mr. Waterman's accountant, who also testified at the second hearing, both Mr. Waterman and petitioner had acquired the cars because of their appreciating value and then held them for sale or lease. The accountant testified also that it was his suggestion that Mr. Waterman transferred the cars to the corporation.

I

Before this court, petitioner contends first that respondent tax administrator and the trial justice who affirmed respondent's March 11, 1976 final decision "misconceived the nature of Rhode Island 'use' tax as a tax on any 'transfer of property' located in Rhode Island." Specifically petitioner contends that the antique cars acquired by it were held for lease or sale to out-of-state lessees or buyers and that therefore it was not subject to use tax on their acquisition because (1) petitioner was not the ultimate user of the cars in this state and (2) G.L. 1956 (1970 Reenactment) §44-18-11, exempts from use tax the acquisition of property shipped or brought into this state for the purpose of subsequently being transported and used solely outside the state.

Initially we note that under §42-35-16 of the Administrative Procedures Act our review of the Superior Court decision affirming the use-tax assessment is limited to a review of "any questions of law involved." We examine the record to determine whether any competent evidence exists to support the decision of the trial justice and whether his deci-

sion is affected by any errors of law. *Herald Press, Inc.* v. *Norberg,* 122 R.I. 264, 405 A.2d 1171, 1177 (1979); *Randall* v. *Norberg,* 121 R.I. 714, 717, 403 A.2d 240, 242 (1979).

General Laws 1956 (1970 Reenactment) §44-18-20 as amended by P.L. 1977, ch. 200, art. 4, §1, imposes use tax on the "storage, use or other consumption in this state" of a motor vehicle purchased from any retailer or from other than a licensed motor-vehicle dealer. "Storage" is defined in §44-18-9 as

> "any keeping or retention in this state, except for sale in the regular course of business or for subsequent use solely outside this state, of tangible personal property purchased from a retailer."

"Use" is defined in §44-18-10 as

> "the exercise of any right or power over tangible personal property incident to the ownership of that property, except that it does not include the sale of that property in the regular course of business."

The petitioner's argument that respondent and the trial justice misconceived the nature of the use tax because, arguably, petitioner was not the "ultimate user" of the subject property seems itself to be a misconception of the controlling issue under the statutes cited above. The issue under those statutes is whether petitioner purchased the cars "for sale in the regular course of business" or acquired and stored them "for subsequent use solely outside this state," not simply whether it held the cars for sale or lease.

We find that there is competent evidence in the record to support respondent's decision, which was not questioned by the trial justice, that petitioner purchased the cars for investment purposes, not for sale in the regular course of business or for subsequent use solely outside this state. The thrust of the testimony at the second administrative hearing was that petitioner acquired and held the cars because they were "in-

creasing approximately 10 percent a year in value."[1] Indeed, although the record indicates that Mr. Waterman, during his ownership of the cars, leased several of them, there is no evidence that petitioner ever entered into any such leases. Moreover, at the time petitioner acquired the cars, the regular course of its business involved the brokerage of textile yarns and associated products. Mister Waterman testified that petitioner did not begin to terminate that business until 1970, some five years after its most costly and numerous car purchases. And petitioner's accountant, in a September 30, 1971 letter written to respondent, stated that "the vintage cars did not in any way participate in the principal business activity of the corporation which is selling textile yarns and associated products."

In addition we note that §44-18-25 of the sales-and-use tax law creates a statutory presumption in favor of respondent's position respecting petitioner's acquisition of the antique cars. Section 44-18-25 provides in pertinent part:

> "It shall be presumed * * * that all tangible personal property sold or in processing or intended for delivery or delivered in this state is sold or delivered for storage, use, or other consumption in this state, until the contrary is established to the satisfaction of the tax administrator. The burden of proving the contrary is upon the person who makes the sale and the purchaser, unless the person who makes the sale takes from the purchaser a certificate to the effect that the purchase was for resale."

---

[1] Subsequent to oral argument petitioner submitted a supplemental memorandum asserting that under the case of *Correia* v. *Norberg,* 120 R.I. 793, 391 A.2d 94 (1978), the testimony of its witnesses that it held the cars for lease or sale should have controlled the findings of fact made by the factfinder. It *Correia* we held that "the positive testimony of a witness, when uncontradicted and unimpeached * * * cannot be disregarded by the trier of fact but must control the findings thereof * * * [unless such] testimony contains inherent improbabilities or contradictions * * *." As our opinion indicates, however, petitioner's reliance on *Correia* is misplaced. A careful scrutiny of the record reveals that there is competent legal evidence to support the findings at issue.

The petitioner does not dispute the applicability of this presumption to its purchases, nor does it contend that a resale certificate was issued with respect to any of its purchases.

The petitioner's argument that its purchases of the cars fell within the exemption of §44-18-11[2] also fails. This exemption, consistent with the mandate of the commerce clause of the U.S. Const., art. I, §8, excludes from taxation any property which in the flow of interstate commerce enters Rhode Island and, with only minor interruption, continues on its interstate journey. *Randall* v. *Norberg*, 121 R.I. at 719, 403 A.2d at 243. The petitioner, as the party seeking an exemption from taxation, had the burden of establishing that its purchases fell within the scope of §44-18-11. *Capitol Building Co.* v. *Langton*, 101 R.I. 131, 137, 221 A.2d 99, 103 (1966). In view of the foregoing, we cannot say that petitioner satisfied that burden.

## II

The petitioner also argues before this court that its statutory and procedural due-process rights were not observed by respondent in reaching his decision to uphold the use-tax assessment. The petitioner first contends that respondent failed to comply with §42-35-12 of the Administrative Procedures Act because he did not rule on each of petitioner's "proposed findings."

The pertinent language of §42-35-12 provides:

"If a party, in accordance with agency rules, submitted proposed findings of fact, the decision shall include a

---

[2]General Laws 1956 (1970 Reenactment) §44-18-11 provides in part:

" 'Storage' and 'use' do not include the keeping, retaining, or exercising of any right or power over tangible personal property shipped or brought into this state for the purpose of subsequently transporting the same outside the state for use thereafter solely outside the state, or for the purpose of being processed, fabricated, or manufactured into, attached to or incorporated into, other tangible personal property to be transported outside the state and thereafter used solely outside the state."

ruling upon each proposed finding."[3]

The federal Administrative Procedures Act contains a similar provision, 5 U.S.C.A. §557(c)(1977). Courts have construed both the federal provision and its state counterpart as not requiring a separate, express ruling on each proposed finding of a party, provided the agency's decision on such proposed findings are clear from the record. *American President Lines, Ltd.* v. *N.L.R.B.*, 340 F.2d 490, 492 (1965); *National Labor Relations Board* v. *State Center Warehouse & C.S. Co.*, 193 F.2d 156, 158 (1951); *Montana Consumer Council* v. *Public Service Comm'n.*, 168 Mont. 180, 192-93, 541 P.2d 770, 777 (1975).

Here petitioner never in fact submitted any designated "proposed findings of fact." In its memorandum of law to respondent, petitioner included twenty-three numbered paragraphs labeled "statement of facts," which primarily reported petitioner's disposition of each of the eleven cars in question, and two paragraphs labeled "ultimate facts," which asserted that petitioner held the cars within the flow of interstate commerce and for sale or lease out of state. Even were we to assume that these paragraphs constituted proposed findings of fact, respondent's ruling on them is abundantly clear from his decision; the twenty-three factual statements were rejected as immaterial and the two conclusory statements were rejected as unfounded. Under these circumstances, to remand the case for specific rulings on each numbered paragraph would be to "insist upon a needless compliance with ritual." *Hopper* v. *Goldstein*, 104 R.I. 32, 46, 241 A.2d 809, 816 (1968).

---

[3]On January 20, 1977, the tax administrator supplemented the administrative hearing procedures of the Division of Taxation by promulgating the following rule:

> "Requests for findings of fact (sec. 42-35-12) must be submitted in a separate document and be so headlined. A statement of facts included in a brief or memorandum of law will be considered only to represent the proponent's version of the facts."

At all times in question here, however, there were no agency rules in effect to govern submission of requests for (or proposed) findings of fact.

The petitioner next argues that respondent failed to comply with §42-35-9(e)(5)[4] of the Administrative Procedures Act because neither he nor the officer presiding at the second administrative hearing furnished petitioner, prior to respondent's rendition of a final decision, with proposed findings of fact to which petitioner could take timely exceptions.

As we construe §42-35-9(e), however, §42-35-9(e)(5) neither expressly nor impliedly requires the agency to furnish a party with proposed findings before a final decision is rendered. This provision of the Administrative Procedures Act delineates what "the record in a contested case shall include." It does no more and no less. The petitioner's argument therefore evinces an erroneous construction of the provision.

The petitioner lastly argues that the respondent violated its right to due process under the state and federal constitutions because in the petitioner's view, the respondent's final decision does not deal with its principal contention that during the taxable periods at issue it was holding the antique cars for lease or sale out of state. In view of the record before us, we consider this argument to be without merit.

The petition for certiorari is denied and dismissed, the writ heretofore issued is quashed, and the papers certified to us are ordered returned to the Superior Court with our decision endorsed thereon.

---

[4]General Laws 1956 (1977 Reenactment) §42-35-9 in pertinent part provides:

"(e) The record in a contested case shall include:

(1) all pleadings, motions, intermediate rulings;

(2) evidence received or considered;

(3) a statement of matters officially noticed;

(4) questions and offers of proof and rulings thereon;

(5) proposed findings and exceptions;

(6) any decision, opinion, or report by the officer presiding at the hearing;

(7) all staff memoranda or data submitted to the hearing officer or members of the agency in connection with their consideration of the case."

834

*Salter, McGowan, Arcaro & Swartz, Incorporated, James R. McGowan,* for petitioner.

*Dennis J. Roberts II,* Attorney General, *Allen P. Rubine,* Assistant Attorney General, *Perry Shatkin,* Chief Legal Officer (Taxation), for respondent.